UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE № 95-481-CR-ALTONAGA

UNITED STATES OF AMERICA,

      *Plaintiff*,

vs.

LUIS H. CANO,

      *Defendant.*

_____/

### LUIS CANO'S MOTION FOR RECONSIDERATION

The Defendant, **LUIS CANO,** by and through the undersigned counsel, files this Motion for Reconsideration of the Court's Order Denying of his *pro se* Motion for Compassionate Release (ECF № 939). As grounds therefore, **MR. CANO**, avers the following:

As this Honorable Court correctly noted, "[t]he only grounds for granting a motion for reconsideration with regard to a judgment of the Court are newly-discovered evidence or manifest errors of law or fact." *See Farrell v. Flecha*, 13-22457-CIV, 2013 WL 12139327, at *1 (S.D. Fla. July 25, 2013) (*citing Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007). In **MR. CANO'S** case, as reflected in this Motion for Reconsideration, the Government's Response contained several manifest errors in both law and fact, which were unfortunately relied upon by this Honorable Court in denying **MR. CANO'S** Motion for Compassionate Release. Due to the current COVID-19 restrictions at USP Terre Haute, **MR. CANO** did not have an opportunity to correct these manifest errors in the form of a Reply to the Government's Response.[1]

---

[1] On September 22, 2020, **MR. CANO** filed a *pro se* Motion for Compassionate Release. *Unfortunately, for reasons unknown to* **MR. CANO**, *not all the exhibits he mailed with his Motion for Compassionate Release, including a letter written by Dr. Austin Kutscher, in support of the fact that he is at an increased risk for serious illness or death should he contract COVID-19, were included in the filing*.

## I.
## EXTRAORDINARY AND COMPELLING REASONS[2]

Contrary to the Government's Response, courts throughout the country, including in this district, have overwhelmingly concluded that a district court can consider factors other than those explicitly listed in subsections (A)-(C) of the Sentencing Commissions' policy statement when determining whether "extraordinary and compelling" reasons exist warranting compassionate release. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 395-400 (E.D. Pa. 2020).  Adopting the Government's view would undermine the very purpose of the First Step Act and the critical 30-day lapse route it provided.[3]

Therefore, this Court has discretion to assess whether **MR. CANO** presents "extraordinary and compelling reasons" for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement.  *See United States v. Brown*, 457 F. Supp. 3d 691,

---

On October 2, 2020, the Government filed a Motion for Extension of Time to File a Response to **MR. CANO'S** *pro se* Motion for Compassionate Release, which this Court granted on the same day.   On October 13, 2020, the Government filed its response in opposition to **MR. CANO'S** *pro se* Motion for Compassionate Release.  Due to COVID-19 restrictions at USP Terre Haute, the prison facility where **MR. CANO** is currently being housed, he did not receive the Government's response in opposition to his Motion for Compassionate Release until October 20, 2020.  On October 23, 2020, prior to his deadline to file a Reply to the Government's Response in opposition to his Motion for Compassionate Release, **MR. CANO** submitted a Motion for Extension of time to file his Reply.  Unfortunately, due to the same restrictions at USP Terre Haute, **MR. CANO'S** motion did not get filed until November 3, 2020, the day after this Honorable Court issued its Order denying his Motion for Compassionate Release.

[2]        As this Honorable Court acknowledged in the Order at issue here (DE 952), **MR. CANO** has exhausted his administrative remedies by submitting his request to the warden of his facility and filing his *pro se* Motion for Reconsideration more than 30 days later.

[3]        *See Rodriguez*, 451 F. Supp. 3d 392, 395-400 (E.D. Pa. 2020) ("Under the First Step Act, however, it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden *never* responds to their request for relief. Thus, Congress specifically envisioned situations where inmates could file direct motions in cases where nobody in the BOP *ever* decided whether the motion qualified for relief under the catchall provision that the Commission originally sought to apply to *all* motions. It would be a strange remedy indeed if Congress provided that prisoners whose wardens failed to respond in such a situation could only take advantage of the thirty-day lapse provision by accepting a pared-down standard of review that omitted the flexible catchall standard.)).

701 (S.D. Iowa 2020); *Moody,* 05-80121-CR-COHN, 2020 WL 4059659, at \*3 (S.D. Fla. May 15, 2020).

## A.
## Mr. Cano's Medical Conditions, COVID-19 and Prison Conditions

Courts in this district have *repeatedly* held that if an inmate has a chronic medical condition that has been identified by the CDC as elevating an inmate's risk of becoming seriously ill from COVID-19, that condition may constitute "extraordinary and compelling reasons."[4] "[N]othing could be more extraordinary and compelling than this pandemic" for an inmate that suffers from a chronic medical condition which the CDC identifies as elevating a person's risk of becoming

---

[4]     *See, e.g., United States v. Curington,* 12-20115-CR, 2020 WL 4344083 (S.D. Fla. July 7, 2020); *United States v. Moody,* 05-80121-CR, 2020 WL 4059766 (S.D. Fla. June 16, 2020); *United States, v. Potts,* 06-80070-CR, 2020 WL 5540126 (S.D. Fla. Sept. 14, 2020); *United States v. McGhee,* 12-60027-CR, 2020 WL 3884567 (S.D. Fla. May 18, 2020); *United States v. Platten,* 08-80148, 2020 WL 4333525 (S.D. Fla. Apr. 17, 2020); *United States v. Sanchez,* 95-00421-CR, 2020 WL 3581631 (S.D. Fla. Apr. 27, 2020); *United States v. Chopra,* 18-CR-20668, 2020 WL 4333507 (S.D. Fla. July 24, 2020); *United States v. Blake,* 15-CR-80018, 2020 WL 4677309 (S.D. Fla. Aug. 12, 2020); *United States v. Feucht,* 11-CR-60025, 2020 WL 2781600 (S.D. Fla. May 28, 2020); *United States v. Lima,* 16-20088-CR, 2020 WL 4343836 (S.D. Fla. May 11, 2020); *United States v. Minsal,* 1:18-CR-20597-UU, 2020 WL 4516360 (S.D. Fla. Aug. 5, 2020); *United States v. Minor,* 18-CR-80152, 2020 WL 4333524 (S.D. Fla. Apr. 17, 2020); *United States v. Schumack,* 14-80081-CR, 2020 WL 4333526 (S.D. Fla. June 11, 2020); *United States v. Gomez,* CR 11-20698, 2020 WL 5518358 (S.D. Fla. Sept. 14, 2020); *United States v. Israel,* 95-00314-CR, 2020 WL 4362258 (S.D. Fla. July 29, 2020); *United States v. Huarte,* CR 11-20587, 2020 WL 4429424 (S.D. Fla. July 31, 2020); *United States v. Laing,* 18-20731-CR, 2020 WL 5032977 (S.D. Fla. Aug. 24, 2020); *United States v. Vazquez Torres,* 19-CR-20342, 2020 WL 4019038 (S.D. Fla. July 14, 2020); *United States v. Bailynson,* CV 18-CR-80124, 2020 WL 5367320 (S.D. Fla. Sept. 8, 2020); *United States v. Reynolds,* 14-CR-80227, 2020 WL 4333504 (S.D. Fla. July 8, 2020); *United States v. Barbuto,* 18-CR-80122, 2020 WL 4333505 (S.D. Fla. Apr. 28, 2020); *United States v. Brown,* 14-CR-60161, 2020 WL 5116781 (S.D. Fla. Aug. 31, 2020); *United States v. Weems,* 18-CR-60185-BB, 2020 WL 4558381 (S.D. Fla. Aug. 7, 2020); *United States v. Lewis,* 10-CR-60292, 2020 WL 4333489 (S.D. Fla. July 20, 2020); *United States v. Siegert,* 13-80009-CR, 2020 WL 4726929 (S.D. Fla. Aug. 13, 2020); *United States v. Oreste,* 14-20349-CR, 2020 WL 4343774 (S.D. Fla. Apr. 6, 2020); *United States v. Rice,* 90-CR-00768, 2020 WL 4333527 (S.D. Fla. June 8, 2020); *United States v. Arenales-Monroy,* 16-CR-20374-KMW, 2020 WL 4344085 (S.D. Fla. June 18, 2020); *United States v. Firebaugh,* 1:16-CR-20341-UU, 2020 WL 4343835 (S.D. Fla. June 25, 2020); *United States v. Woodson,* 13-20180-CR, 2020 WL 4333488 (S.D. Fla. June 4, 2020); *United States v.* Pimental, 19-CR-20104, 2020 WL 5500840 (S.D. Fla. Sept. 11, 2020); *United States v. Welch,* 09-60212-CR, 2020 WL 4333667 (S.D. Fla. May 21, 2020); *United States v. Woolley,* 9:19-CR-80093, 2020 WL 4904210 (S.D. Fla. Aug. 20, 2020); *United States v. Jaen,* 91-00814-CR, 2020 WL 4209283 (S.D. Fla. July 6, 2020).

critically ill from COVID-19.  *See United States v. Rodriguez*, No. 2:03-cr-271, Doc. # 135 at 2 (E.D.P.A. Apr. 1, 2020).

MR. CANO suffers from untreated severe stage hypertension. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 401–02 (E.D. Pa. 2020) (The fatality rate for people with hypertension was 8.4%.). The CDC defines Stage 1 Hypertension as a blood pressure at or above 130/80 mm Hg and Stage 2 Hypertension (the most severe stage) as a blood pressure at or above 140/90 mm Hg.[5]  Since March of this year, MR. CANO'S blood pressure readings have been as follows: September 2, 2020, right arm, 172/88, left arm, 169/78; July 24, 2020, 140/83; July 8, 2020, 157/85; and March 6, 2020, 159/82.  A copy of MR. CANO'S relevant BOP medical records is attached as Exhibit № 1.[6]  Due to MR. CANO'S alarmingly high blood pressure, he was ordered to submit to weekly blood pressure checks.  However, COVID-19 restrictions at Terre Haute have prevented him from abiding by the doctor's orders to submit to weekly blood pressure checks. Therefore, MR. CANO'S high blood pressure is currently untreated.  The fact that MR. CANO is not receiving the proper care he needs, irrespective of COVID-19, is also extremely concerning. District courts across the nation, including courts in this district, have found that hypertension, a personal COVID-19 risk factor, in a high-risk prison atmosphere, constitutes "extraordinary and compelling reasons" warranting the grant of compassionate release.  *See Lewis*, 2020 WL 4333489 (S.D. Fla. July 20, 2020) (holding that the defendant's high blood pressure, alone, a condition which the CDC states may increase the risk of severe illness from COVID-19, coupled with conditions within a correctional environment, constituted "extraordinary and compelling reasons"

---

[5]     Ctrs.  for  Disease  Control  and  Prevention, *Facts  About  Hypertension*, https://www.cdc.gov/bloodpressure/facts.htm (last visited Sept. 30, 2020).

[6]     Exhibit № 1 only contains some of MR. CANO'S BOP medical records.  However, should this Court deem it necessary, the undersigned is prepared to send the Government and this Court all of MR. CANO'S BOP medical records.

justifying compassionate release.).[7]   Finally, as his medical records reflect, **MR. CANO** has an extensive history of taking corticosteroids, which the CDC explicitly states makes individuals immunocompromised and therefore more susceptible to seriousness illness or death should they contract COVID-19.[8]   *See* Exhibit № 1.

In determining whether "extraordinary and compelling reasons" exist courts do not consider a defendant's medical condition in isolation, rather, courts evaluate a defendant's medical record as a whole, including taking into account a defendant's age.   *Blake*, 15-CR-80018, 2020 WL 4677309 (S.D. Fla. Aug. 12, 2020).   **MR. CANO** is a 61-year-old former smoker with a body mass index ("BMI") of 29.6.   A copy of **MR. CANO'S** relevant BOP medical records is attached as Exhibit № 2.   The CDC guidelines indicate that people of any age with a BMI of 30 or higher are at an increased risk of severe illness from COVID-19.   *United States v. Critchlow*, 215CR00006JMSCMM, 2020 WL 5544043, at *1 (S.D. Ind. Sept. 16, 2020).   **MR. CANO'S** BMI

---

[7]      *See also United States of Am. v. Mines*, 4:18-CR-00552, 2020 WL 4003048 (N.D. Ohio July 15, 2020) (holding that the defendant's hypertension, in conjunction with the fact that FCI Coleman Low has had cases of COVID-19, presents extraordinary and compelling reasons that justify the grant of compassionate release); *Salvagno*, 5:02-CR-51 (LEK), 2020 WL 3410601 (N.D.N.Y. Apr. 23, 2020) (a hypertensive prisoner at increased risk from the virus, constituted extraordinary and compelling circumstances that warranted grant of compassionate release) (citing *United States v. Bray*, 19-20216-9, 2020 WL 2494889, at *4 (E.D. Mich. May 14, 2020) (granting pre-trial release to 48-year-old hypertensive inmate otherwise "in good health," noting that "new studies identify an increased risk of death from the virus for individuals with hypertension ... the Court considers these studies indicating that hypertension may be an emerging risk factor for the virus") (citing news articles and recent CDC data); *United States v. Gamble*, No. 19-CR-348, Dkt. No. 59 at 8 (D.D.C. Apr. 13, 2020) (granting pre-trial release to a hypertensive inmate and noting that "the [WHO] classifies those with hypertension as having an increased risk for severe disease and death as a result of COVID-19, with a mortality rate of 8.4%") (citing *Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19)*, WHO, at 12); *Smith v. Warden, Toledo Corr. Inst.*, No. 12-CV-425, 2020 WL 1815717, at *14 (S.D. Ohio Apr. 9, 2020) (noting that "the threat [of COVID-19] is particularly significant—indeed, critical—as to those individuals who suffer from preexisting conditions—including Petitioner, who has hypertension") (citing New York State government data))."

[8]      Ctrs. for Disease Control and Prevention, If You Are Immunocompromised, Protect Yourself From COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/immunocompromised.html (last visited Nov. 16, 2020).

is just .4 kg/m2 away from this range.  The CDC guidelines also indicate that people of any age who are former cigarette smokers may be at an increased risk of severe illness from COVID-19. *Id.*  According to researchers at the University of California—San Francisco, a meta-analysis of studies that included 11,590 COVID-19 patients suggests that the risk of disease progression in those who currently or previously smoked cigarettes was nearly double that of non-smokers.  *Id.* The fact that **MR. CANO** recently quit smoking does not decrease his level of risk because the guidelines indicate that former smokers may be at an increased risk of severe illness or death from COVID-19.  *Id.*[9]

In addition, due to **MR. CANO'S** age, he is at least three (3) times more likely to succumb to the virus than that of the 40-49 year old population.  *See United States v. Asher*, 1:09-CR-414-MHC-AJB, 2020 WL 3424951, at *3 (N.D. Ga. June 15, 2020) (9.6% of fatalities were individuals in the 50-59 year old age group, more than any lower age groups and nearly three times that of the 40-49 year old age group) (citation and quotations omitted).  Nevertheless, **MR. CANO** suffers from underlying medical conditions, which increase his risk of severe illness or death should he contract COVID-19 regardless of age.  *See Critchlow*, 215CR00006JMSCMM, 2020 WL 5544043, at *5 (S.D. Ind. Sept. 16, 2020) (Because the defendant suffered from health conditions that the CDC guidelines identified as possibly increasing the risk of severe illness or death at any age, the Government's argument that the defendant is young was unpersuasive to the court.).

In addition to hypertension, being overweight (almost obese), and being a former smoker, **MR. CANO** suffers from obstructive sleep apnea (**MR. CANO** uses a CPAP machine to mitigate his

---

[9]       *See also United States v. Rich*, 17-CR-094-LM, 2020 WL 2949365, at *3 (D.N.H. June 3, 2020) ("The CDC acknowledges that smoking can render people 'immunocompromised,' putting them in the high-risk category.  And a recent study shows that people who currently smoke or previously smoked cigarettes are at a substantially higher risk for complications from COVID-19 than non-smokers.")).

sleep apnea); osteoarthritis; recurring sinus infections and allergies; neuropathy; prolonged use of

steroids; and he has undergone three shoulder and hand surgeries. *See* Exhibit № 1.   Although

**MR. CANO** did undergo surgery to fix his deviated septum, he still suffers from impaired breathing

due to congestion.   *See* Exhibit № 1.   Courts in this district, and nationwide, have granted

compassionate release for individuals with like medical conditions.[10]  Thus, based on **MR. CANO'S**

BOP medical records, unless the Government can prove that he has a crystal ball that alerted him

to the fact that the United States would become victim to COVID-19 in March of 2020, his medical

records completely refute its claim that he "continues to hoodwink the Court claiming in the

present motion that he suffers from medical conditions that BOP medical records clearly show he

does not."

In **MR. CANO'S** *pro* se Motion for Compassionate Release, he included a letter from Dr.

Austin Kutscher, who after having reviewed **MR. CANO'S** medical records concluded that, he is at

---

[10] *See e.g., United States v. Rivera*, 13-20775, 2020 WL 5105090, at *1 (E.D. Mich. Aug. 31, 2020) (compassionate release granted to 40 year old defendant who suffers from varicose veins of the lower extremities, obesity, hyperlipidemia, sleep apnea, hypertension, chronic embolism and thrombosis, and long term use of anticoagulants.); *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280 (E.D. Mich. May 21, 2020) (granting compassionate release to defendant with severe obesity, obstructive sleep apnea, hypertension, and prediabetes); *United States v. Delgado*, No. 18-cr-17, 2020 WL 2464685, at *4, 2020 U.S. Dist. LEXIS 84469, at *10–11 (D. Conn. Apr. 30, 2020) (granting compassionate release to inmate with obesity and sleep apnea "because those conditions place [inmates] at high risk for serious complications due to COVID-19); *United States v. Scparta*, No. 18-cr-578, 2020 WL 1910481, at *2, 2020 U.S. Dist. LEXIS 68935, at *4–5 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release to 55-year old inmate suffering from high blood pressure, high cholesterol, sleep apnea, and hypertension); *United States v. O'Neil*, No. 11-CR-00017, 2020 WL 2892236, 2020 U.S. Dist. LEXIS 96540 (S.D. Iowa June 2, 2020) (granting compassionate release to prisoner that suffered from asthma and used inhalers and a CPAP machine to assist with breathing where court was concerned "that Defendant's preexisting medical conditions create an untenable risk of death should Defendant contract a lethal, easily spread virus for which 'there is no known cure, no effective treatment, and no vaccine.' "); *Critchlow*, 215CR00006JMSCMM, 2020 WL 5544043, at *2 (S.D. Ind. Sept. 16, 2020) (Granting compassionate release to former smoker with obesity as his underlying health condition and holding that given "the events of the last six months and the projections of public health officials regarding the spread of COVID-19, the Government's suggestion that USP Terre Haute will escape the pandemic without a significant outbreak appears unreasonably optimistic.")).

a greater risk than the general public from contracting COVID-19, and suffering from the consequences of COVID-19.  A copy of this letter is attached as Exhibit № 3.  Unfortunately, as explained *supra*, this Court did not receive the full letter from Dr. Kutscher.  Recently, Dr. Kutscher sent an addendum to his previous letter wherein he highlighted the fact that despite undergoing surgery to fix his deviated septum, **MR. CANO** still suffers from sinus problems.  Moreover, Dr. Kutscher also highlighted the increase risk of serious illness or death for individuals, like **MR. CANO**, who suffer from hypertension.  Specifically, Dr. Kutscher wrote:

> Arterial hypertension is clearly a risk for worst outcome if a patient develops COVID infection.  Hypertension increases a patient's risk of stroke and also of bleeding in to the bran – both of which have been shown to be significant causes of morbidity and MORTALITY in patients who develop COVID.

A copy of Dr. Kutcher's addendum is attached as Exhibit № 4.

Sadly, for **MR. CANO**, the risk of contracting COVID-19 and becoming critically ill due to the spread of the virus within his prison is not a hypothetical one.  *See Riccardi*, 02-20060-JWL, 2020 WL 4260636, at *3 (D. Kan. July 24, 2020).  **MR. CANO** is presently housed at USP Terre Haute.  As the Government previously admitted, despite BOP's significant efforts to try to manage the virus in its facilities, it reports that at Terre Haute, "six inmates and one staff member are positive, two inmates and no staff members have died, and 81 inmates and two staff members have recovered."[11]  Vigo County, where Terre Haute is located, is currently flagged by the Indiana Department of Health as a COVID-19 hotspot.  *Id.*

---

[11]    *See Critchlow*, 215CR00006JMSCMM, 2020 WL 5544043, at *2 (S.D. Ind. Sept. 16, 2020) ("SP Terre Haute is currently experiencing an uptick in COVID-19 cases. When the Government filed its brief on August 17, 2020, just one inmate at USP Terre Haute had tested positive for the virus. Dkt. 50, p. 1. By the time Mr. Critchlow filed his reply on August 16, 2020, that number had increased to 14. Dkt. 51, p. 4. As of September 16, 2020, 21 inmates at USP Terre Haute are currently positive for COVID-19 and 63 have recovered from the virus, and 21 inmates at adjacent FCI Terre Haute are currently positive and 66 have recovered.").

Furthermore, the Government's assurances that the BOP's "extraordinary actions" can protect inmates ring hollow given that these measures have already failed to prevent transmission of the disease at the facility where **MR. CANO** is housed. The Government also cannot credibly argue that, "Cano makes sweeping assertions devoid of substance and filled with contempt for prison officials and their action at Terre Haute, alleging that the prison cannot provide adequate medical protection from COVID-19 for its inmates and staff . . . ." when the Government has basically conceded to **MR. CANO'S** exact argument in its Response to another Motion for Compassionate Release. A copy of the relevant Motion for Compassionate Release and the Government's Response is attached as Exhibit № 5. *See United States v. Randall,* 17-CR-60178, 2020 WL 6392845, at *5 (S.D. Fla. Nov. 2, 2020) ("Defendant points out that the Government has previously conceded that type 2 diabetes "would qualify as an 'extraordinary and compelling reason'. . . . As such, the Government cannot credibly argue that this Defendant's health conditions fail to constitute extraordinary and compelling circumstances. The Court will therefore hold the Government to its concession.").

Because **MR. CANO** is at a greater risk for medical complications if he contracts the virus due to his health status, **MR. CANO'S** health and life are in serious dangerous if he continues to serve his sentence at USP Terre Haute. Therefore, **MR. CANO'S** health status in conjunction with the significant outbreak at Terre Haute, present extraordinary and compelling reasons that justify the grant of compassionate release.[12]

---

[12]      *See Riccardi*, 02-20060-JWL, 2020 WL 4260636, at *3 (D. Kan. July 24, 2020) ("The combination of defendant's age, his underlying health conditions, which increase his risk of serious harm from the virus, and the recent outbreak at the facility, where it appears that measures to contain the virus have been ineffective, provides an extraordinary and compelling reason for relief in this case."); *United States v. Vega*, 1:16-CR-00319, 2020 WL 4784797, at *1 (N.D. Ohio Aug. 18, 2020) ("Vega's medical conditions, in conjunction with the presence of COVID-19 at FCI Coleman Low, are extraordinary and compelling reasons that justify his compassionate release.").

**B.**
**UNWARRANTED SENTENCE DISPARITIES AND CHANGES IN LAW**

Contrary to the Government's assertion in its Response, district courts around the country have recognized that defendants are entitled to relief under the First Step Act for "extraordinary and compelling reasons" including sentencing disparities.[13]  This is especially true in **MR. CANO'S** case where there are two serious issues with his judgment, that could have dramatically reduced his sentence, and where none of his co-defendants received the sentence he received, to wit: life imprisonment.

Once again, the Government uses alternative facts when it asserts that, "Cano's criminal activity at the head of his organization easily satisfied, as his jury found, every predicate needed to invoke the mandatory life imprisonment section of the CCE statute." The jury *could not have found that* **MR. CANO** *satisfied every predicate needed to invoke the mandatory life imprisonment*

---

[13]       *See Hope*, 90-CR-06108-KMW-2, 2020 WL 2477523, at *2 (S.D. Fla. Apr. 10, 2020) ("Other courts have found that sentencing disparities like that presented in Mr. Hope's case, coupled with a demonstration of profound rehabilitation, constitutes 'extraordinary and compelling' circumstances sufficient to warrant a sentence reduction.) (citing *United States v. Eric Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020) ("Mr. Millan's extraordinary rehabilitation, together with his remorse and contrition, his conduct as model prisoner and man of extraordinary character, his leadership in the religious community at FCI Fairton, his dedication to work with at-risk youth and suicide prevention, and the support of BOP staff at FCI Fairton, including their opinion that if released, Mr. Millan would be a productive member of society and no danger to others, and the sentencing disparity that would result from further incarceration all constitute extraordinary and compelling reasons justifying a reduction in sentence."); *Maumau*, 2020 WL 806121, at *7 ("[T]he court concludes that a combination of factors—Mr. Maumau's young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment—establish an extraordinary and compelling reason to reduce Mr. Maumau's sentence."); *United States v. Decator*, No. CR CCB-95-0202, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (reducing defendant's sentence to time served under the First Step Act based on, among other things, the fact that "if Decator were sentenced today, his three § 924(c) convictions would result in a consecutive sentence of 15 rather than 45 years."); *United States v. Urkevich*, 2019 WL 6037391 at *4 (D. Neb. Nov. 14, 2019) (finding that a reduction of defendant's sentence under the First Step Act was warranted because of "extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed"); *United States v. Mondaca*, No. 89-CR-0655-DMS, 2020 WL 1029024, at *5 (S.D. Cal. Mar. 3, 2020) (reducing the defendant's sentence to time served under the First Step Act because, among other things, "Defendant has been in custody for over 365 months, more than twice the term he would likely receive under current law").

---

because he was not specifically charged with 21 U.S.C. § 848(b) –  as being the "principal" or

"one of several principal" administrators, organizers or leaders – as is required to trigger the

*mandatory* life imprisonment sentence.  Instead the Government charged **MR. CANO** with 21

U.S.C. § 848(a) and (c) – which does not require a sentence of mandatory life.  The relevant charge

in the indictment reads as follows,

> From in or about June, 1987, to on or about October 1, 1996, at
> Miami, Dade County, in the Southern District of Florida, and
> elsewhere, the defendant, Luis H. Cano, a/k/a "Gallo", did
> knowingly and intentionally engage in a continuing criminal
> enterprise in that he did violate Title 21 U.S.C. section 846 and
> 841(a)(1), as alleged in counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13
> of this indictment, which counts were incorporated herein by
> reference, which violations were part of a continuing series of
> violations of said statutes undertaken by the defendant Luis H. Cano,
> a/k/a "Gallo," in concert with at least five other persons, with respect
> to whom the defendant Luis H. Cano  occupied a position of
> organizer, supervisor and manager and from which continuing
> serious of violations the defendant Luis H. Cano, a/k/a/ "Gallo,"
> obtained substantial income and resources in violation of Untied
> States Code Title 21 Section 848.

At trial, the jury instructions as to this count were substantially the same.  A copy of the jury charge

transcript is attached hereto and incorporated by reference herein as Exhibit № 6.  The language

contained in **MR. CANO'S** indictment and the jury charge is the ***exact*** language of 848 (c), which

defines the elements of a "continuing criminal enterprise", for the purpose of triggering 848(a):

> ***For purposes of subsection (a)***, a person is engaged in a continuing
> criminal enterprise if—
> **(1)** he violates any provision of this subchapter or subchapter II the
> punishment for which is a felony, and
> **(2)** such violation is a part of a continuing series of violations of this
> subchapter or subchapter II—
> **A)** ***which are undertaken by such person in concert with five***
> ***or more other persons with respect to whom such person occupies***
> ***a position of organizer, a supervisory position, or any other***
> ***position of management, and***
> **(B)** ***from which such person obtains substantial income or***
> ***resources.***

21 U.S.C.A. § 848 (emphasis added).  21 U.S.C. § 848(c), does not carry a mandatory life sentence, instead it carries a minimum mandatory sentence of twenty (20) years for a first time offender.  21 U.S.C. § 848(b), the section of the statute that does carry a mandatory life sentence, reads as follows:

> **(b) Life imprisonment for engaging in continuing criminal enterprise**
>
> Any person who engages in a continuing criminal enterprise *shall be imprisoned for life and fined in accordance with subsection (a), if*--
>
> **(1)** such person is the *principal administrator*, organizer, or leader of the enterprise or is *one of several such principal* administrators, organizers, or leaders; and
>
> **(2)(A)** the violation referred to in subsection (c)(1) *involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)* of this title, or
>
> **(B)** the enterprise, or any other enterprise in which the defendant was the *principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B) of this title*.

21 U.S.C. § 848 (emphasis added).

At the time of **Mr. Cano's** trial and sentencing hearing, pursuant to the Supreme Court decision in *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), Section 848(b) was viewed by some circuits as a sentencing enhancement, rather than a separate offense.  *See United States v. Smith*, 223 F.3d 554, 566 (7th Cir. 2000); *United States v. Tidwell*, 521 F.3d 236 (3d Cir. 2008).  However, the Supreme Court in, *Alleyne v. United* States, 570 U.S. 99 (2013), and United *States v. Haymond*, 139 S.Ct. 2369 (2019), made it clear that any increase in a defendant's authorized punishment contingent on the finding of a fact requires a jury and proof beyond a reasonable doubt no matter what the government chooses to call the exercise.  *United States v. Haymond*, 139 S.Ct. 2369, 2379 (2019)  (Because the Constitution's guarantees cannot mean less today than they did the day they

were adopted, it remains the case today that a jury must find beyond a reasonable doubt every fact

" 'which the law makes essential to [a] punishment' " that a judge might later seek to impose.").

Therefore, had **MR. CANO** been sentenced today, in order for the district court to impose a

mandatory life sentence, as it did here, **MR. CANO** would have had to have been indicted for

Section 848(b) specifically, and the jury would have had to have found beyond a reasonable doubt

that he was a "principal" or "one of several such principals", and the drug quantity amount or the

amount of money in gross receipts specified in 848(b).[14]  In *United States v. Smith*, the court

highlighted the significant prejudices to the defendant in viewing this section of the statute as a

sentencing enhancement versus a separate offense.

> We agree entirely with Justice Thomas's observation that the predicted sentence would often be lower, if the judge knew she could select a sentence below life. Indeed, we have often remanded cases for resentencing if a district court makes an error in calculating either offense level or criminal history under the Sentencing Guidelines, and (for example) that error has the effect of moving the defendant from level 43 (mandatory life) to level 42 at any criminal history category (360 months to life). See *United States v. Patterson,* 215 F.3d 776, 786 (7th Cir.2000); *United States v. Guyton,* 36 F.3d 655, 661 (7th Cir.1994). The defendant is entitled in those cases to a chance to persuade the judge to select something less than life, even though the risk of a new life sentence remains. Nevertheless, the Court has reiterated several times that it has not overruled *McMillan,* and it seems to us that the rationale of *McMillan* applies with equal force to § 848: "[The statute] operates to divest the judge of discretion to impose any sentence of less than [life] for the underlying felony; it does not authorize a sentence in excess of that otherwise allowed for that offense." See 477 U.S. at 81–82, 106 S.Ct. 2411. We therefore reject the Governor defendants' argument that the indictment should have charged that they satisfied the criteria of § 848(b) and that the jury should have found those facts beyond a reasonable doubt, and we move on to the other common issues.

---

[14]     This issue was partially addressed by the district court at **MR. CANO'S** sentencing hearing. A copy of the sentencing transcript is attached hereto and incorporated by reference herein as Exhibit № 7.

*Smith*, 223 F.3d 554, 565–66 (7th Cir. 2000).

In this case, there does exist evidence that **MR. CANO** was not the "principal" – it was Ruben Carillo-Rosales.  *See* Supplement to Defendant Luis Cano's Motion to Dismiss Indictment (DE 366) (citing to Ruben Carillo-Rosales PSR) ("24. The excerpt reads: 24.  The <u>government</u> provided the following role assessment: 25. Ruben Carillo-Rosales is the <u>lead</u> defendant in this case.  He has been identified as the <u>owner</u> of the cocaine and the <u>one</u> in charge of securing Attorney Burnbaum to obtain the information concerning the location of the 145 kilograms of cocaine.  He was the one directing Cuartas, Marcial, Burnbaum, Tanian Mohler and her parents.).

Furthermore, the Government's theory before the district court in which it stated that it was pursuing at least some of the substantive counts against **MR. CANO** under the aiding and abetting statute also provides support that he was not the principal.  A copy of the transcript wherein the Government states that it is pursuing the case against **MR. CANO** under the aiding and abetting statute is attached hereto and incorporated by reference herein as Exhibit № 8.  Lastly, nowhere in **MR. CANO'S** PSI does the word principal appear. Therefore, there is evidence that the jury could have determined that **MR. CANO** was not a principal or one of several principles and therefore did not qualify for *mandatory* life imprisonment, which would have allowed **MR. CANO** to persuade the district court to sentence him less than life.

Moreover, **MR. CANO'S** concurrent sentence of life imprisonment for the continuing criminal enterprise (CCE) charge and the conspiracy charge constitutes double jeopardy.  The law is clear that conspiracy is a lesser included offense of CCE.  *United States v. Atencio*, 435 F.3d 1222, 1235 (10th Cir. 2006) ("As the government concedes on appeal, the conspiracy charge against the Atencios is a lesser included offense of the continuing criminal enterprise.") (citing *Rutledge v. United States*, 517 U.S. 292 (1996)).  This coupled with the change in law regarding

the continuing criminal enterprise statue and the mandatory nature of the sentencing guidelines pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, could have led to a less than life term of imprisonment sentence for **Mr. Cano**.

District courts have also looked at sentence disparities in determining whether "extraordinary and compelling" reasons exist warranting a defendant's compassionate release. Ironically enough, the individual the Government includes in its Response at footnote 9 (in alleged support of **Mr. Cano's** life sentence *even though this incident was unrelated to* **Mr. Cano**), Jorge Hernandez, who attempted to secure a "hit" on the DEA case agent, *was not sentenced to life imprisonment*. Therefore, *although the Government has no evidence* that **Mr. Cano** exhibited violence during the acts that make up the instance offense (if the government had such evidence it would not hesitate to include them in its Response as it did an act of violence committed by a co-defendant but *unrelated to Mr. Cano*) he was sentenced to life imprisonment.[15]

Although courts are sensitive to the fact that retroactivity for sentencing calculations generally is the Legislature's province, *Brown*, 457 F. Supp. 3d 691, 702–03 (S.D. Iowa 2020), "Congress already has shown how factors that are not sufficient to establish an 'extraordinary and compelling reason' alone can still be considered with other factors." *Id.* In the case at hand, **Mr. Cano**, a non-violent offender, received a greater sentence than the heads of the Arellano-Felix cartel, the Gulf and Zetas cartel, and many other notoriously violent kingpins. Furthermore, the

---

[15]     *See United States v. Brown*, 457 F. Supp. 3d 691, 702 (S.D. Iowa 2020) (*"*Sentences given to many like Defendant "would be laughable if only there weren't real people on the receiving end of them." *United States v. Holloway*, 68 F. Supp. 3d 310, 312 (E.D.N.Y. 2014). Defendant received a 510-month sentence—or 42.5 years—after pleading guilty to selling an admittedly large amount of methamphetamine in western Iowa during the early 2000s. ECF No. 125 ¶¶ 10–62. His codefendant, who ran his own drug operation, was released two years ago. ECF No. 217."); *United States v. Almontes*, 3:05-CR-58 (SRU), 2020 WL 1812713, at *8–9 (D. Conn. Apr. 9, 2020).

following chart illustrates the sentence disparities with the co-defendants/co-conspirators in **MR. CANO'S** case:

| Disparate Sentence of MR. CANO'S Co-defendants/Co-conspirators | |
|---|---|
| **Ruben Carillo-Rosales** (who the government labeled the "leader") | 243 months imprisonment |
| **Tania Mohler** | 10 months imprisonment |
| **Gustavo Osorno** | |
| **David K. Mohler** | 87 months imprisonment |
| **Patricia Wells** | 72 months imprisonment |
| **Jorge Enrique Hernandez** | 227 months imprisonment |
| **David Matos** | 235 months imprisonment |
| **Michael Burnbaum** | 105 months imprisonment |
| **Wilfredo Schery** | 188 months imprisonment |
| **Leo Perdomo** | 48 months imprisonment |
| **Maria Cano** | 3 years of probation |

Notably, **MR. CANO** has already served over four (4) years more than the next longest sentence in his case.

### C.
### MR. CANO'S EXTRAORDINARY REHABILITATION

Courts have found that an inmate's rehabilitation while incarcerated, in conjunction with other factors, can constitute "extraordinary and compelling" circumstances sufficient to warrant a sentence reduction.  *See Hope*, 90-CR-06108-KMW-2, 2020 WL 2477523, at *2 (S.D. Fla. Apr. 10, 2020); *Stephenson*, 3:05-CR-00511, 2020 WL 2566760 at 2 (S.D. Iowa May 21, 2020).[16]

Here, **MR. CANO** provides ample evidence that he is no longer the same immature and

---

[16]     *See also Ledezma-Rodriguez*, 3:00-CR-00071, 2020 WL 3971517, at *5–6 (S.D. Iowa July 14, 2020) ("Rehabilitation of the defendant *alone* shall not be considered" sufficiently extraordinary and compelling to justify compassionate release. § 994(t) (emphasis added). Yet a "statute should be construed so that effect is given to all its provisions. . . . This means that for the word "alone" to do any work—as it must—the statute allows courts to consider rehabilitation as part of a compassionate release motion. Thus, several courts, including this one, have found a defendant's rehabilitation to be part of the extraordinary and compelling reasons favoring release.");*United States v. Stephenson*, 3:05-CR-00511, 2020 WL 2566760, at *3 (S.D. Iowa May 21, 2020) ("Courts have found that the unprecedented risks of COVID-19 and rehabilitation each constitute extraordinary and compelling reasons to grant compassionate release.").

irresponsible person whom this Court incarcerated over two decades ago.  *See United States v. Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020).  While incarcerated **MR. CANO** has availed himself of countless hours of educational courses.  A copy of **MR. CANO'S** BOP Individualized Needs Plan – Program Review is attached as Exhibit № 9.  In the 24 years he has been imprisoned, **MR. CANO** has only incurred a single *minor* disciplinary infraction for possessing too many postal stamps, no small feat in a closely monitored federal prison.  *See Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020).  His DOJ's risk needs and assessment for prisoners, developed in accordance with the First Step Act (PATTERN score), places him in the "minimum" category, the lowest category possible.  **MR. CANO** has also taken significant steps to reform and better himself so that he may be a more productive individual upon his release.  More notably, the record suggests that **MR. CANO** has persevered despite his life without parole sentence.  For example, he has worked for decades and forged meaningful relationships with other inmates and staff alike, taking younger inmates under his wing and helping them stay out of trouble, while also fostering relationships with his family members.  The *multiple letters* submitted by BOP staff members on his behalf (a rarity) is further evidence of **MR. CANO'S** extraordinary rehabilitation.  The Correction Officers and other BOP staff describe **MR. CANO** as follows:

> *In 2016, Mr. Cano took over the title of Crossover Orderly which is only entrusted to individuals who had proven to maintain good morals and integrity.  The crossover area is where United Management officers are located (Counselors, Case Managers, Secretaries, and United Managers).*
>
> *Mr. Cano performed all his duties placed upon him flawlessly without having to be micromanaged or directed.  He's a self-motivated individual with a phenomenal work ethic.*  Mr. Cano aided me in maintaining accountability of the other unit orderlies and tasks set upon them and ensured the united he resided in was always held to the highest standards *typically resulting in achieving*

*the highest cleanliness rating through the Penitentiary.*

*Mr. Cano is not only respected by staff, but holds a high respect among the inmate population as well.  He selflessly aids new inmates upon their arrival and ensures that they receive the proper supplies necessary for everyday living as well as directs them of everyday operations.  This is not expected of him, but has been noticed by me other the years numerous times.*

- (emphasis added); T. Carmichael, Correction Counselor at FCC Terre Haute, assigned to Mr. Cano's Caseload from February 2014 through December 2018.

*Mr. Cano is a capable, dedicated and personable individual.  He is always eager to help staff as well as other inmates.*  He is very well respected among the inmate population here at FCC Terre Haute.

*I highly recommend Mr. Cano be given the opportunity as a second chance to join release.  His positive attitude and work ethic is a model for other inmates to emulate.*

I hope when making the decision for clemency, this helps factor in his immediate release.  *I honestly believe that Mr. Cano is a deserving of this opportunity and is ready to rejoin society.  He is very self-motivated and driven.*

- (emphasis added); E. Booe, Unit Secretary at FCC Terre Haute.

*I highly recommend Mr. Cano be given the opportunity as a second chance to rejoin society.*  His work ethic and people skills is a model for other inmates to emulate.

*I believe that Mr. Cano is deserving of this opportunity and ready to rejoin society.*

- (emphasis added); R. Weyrauch, Correctional Counselor at FCC Terre Haute.

*Luis Cano has been a model inmate since his arrival at USP Terre Haute, Indiana on July 29, 2013.*

- (emphasis added); Case Manager Springer at FCC Terre Haute.

His work ethic and interpersonal skills are exceptional along with his professionalism and attention to detail.  *His ability to communicate with staff and other inmates in a positive manner allows staff to intercede and sole issues among other inmates and*

*between staff and inmates in a positive manner before they escalate. Luis Cano has been a model prisoner since arriving at USP Terre, In In July of 2013. He has only had one minor disciplinary infraction during his entire incarceration, which is 11 years old.*

- (emphasis added); Case Manager T. Howald at FCC Terre Haute.

I have had inmate Cano assigned to inmate Cano assigned to *my* caseload, since 2013-PRESENT, and have had daily interactions with him, as he is assigned to our cross-over orderly detail. *It is my personal understanding that Mr. Cano was placed this detail in 2016, a job that is only entrusted to individuals who have proven to maintain good morals and integrity*, as the cross-over area is the area where Unit Management officers are located [i.e. Counselors, Case Managers, Secretaries, & Unit Managers], and requires the overall sanitation and maintenance of staff equipment, restrooms and general areas where staff personal items are stored. *The job in of itself is one the most prestigious jobs within the institution, due to him working within close proximity where "sensitive information" and staff personal items are generally stored. It is my personal observation and understanding, that Mr. Cano has performed all the required duties, placed upon him ….flawlessly ….without having to be micro-managed or directly supervised! Mr. Cano has also aided me and our staff to maintain accountability of other unit orderlies and tasks set upon them, while ensuring the unit he resides in is always held to the highest standards typically resulting in receiving the highest rating for cleanliness throughout the institution. Moreover, Mr. Cano is not only highly respected by staff, for his work ethic and integrity, but also holds a high level of respect amongst his fellow peers and inmates. He consistently and selflessly aids new inmates, upon their initial arrival and ensures they receive adequate guidance, proper supplies necessary for everyday living, and orients them as to the everyday operations. Although this is not expected of him, it is something that is easily noticed by staff using his daily interaction with other inmates over the years. In sum, Mr. Cano has maintained exemplary and exceptionally clear conduct over the 24 years his continued incarceration, and deserved an opportunity at a chance at life and to redeem himself. Personally, I believe that the 24 years he has served, is more than is required for a non-violent drug offense, and should serve as a deterrence to anyone in the future. As a first time non-violent drug offender, Mr. Cano has paid dearly for any/all mistake he may have mad in the past.*

- (emphasis added); R. Orr Counselor at FCC Terre Haute.

> *In my opinion, if given the chance, Mr. Cano will be a contributing member of society.  I have watched many inmates release and come back to be incarcerated.  I believe that Mr. Cano's record while being incarcerated should be looked at to help make a decision and the reviewing people will see a man that has paid his price in full.*

- (emphasis added); David Redman Unit Secretary at  USP Terre Haute.

> *In essence, I believe Mr. Cano is worthy and ready to be that same productive, respectful, humble and model citizen of society if provided the chance for reentry via sentence commutation.*

- (emphasis added); David Redman Unit Secretary at  USP Terre Haute.

We respectfully submit that the extraordinary support for **Mr. Cano** among BOP staff at Terre Haute and their opinions that if released he would be a productive member of society is a compelling factor in favor of release.  *See Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020) ("The Court finds the extraordinary support for Mr. Milian among BOP staff at FCI Fairton and their opinions that if released he would be a productive member of society to be a compelling factor in favor of release.").  A copy of the numerous BOP letters written in support of **Mr. Cano** are attached as Exhibit № 10.

Despite his life sentence, **Mr. Cano** assumed a positive outlook and attitude towards life, sought to improve himself to the utmost extent possible and was motived to do so not withstanding his circumstances.  District Courts have found conduct similar to **Mr. Cano's** to be an extraordinary and compelling circumstance warranting the grant of compassionate release.  *See Millan*, 91-CR-685 (LAP), 2020 WL 1674058, at *9 (S.D.N.Y. Apr. 6, 2020); *United States v. Fisher*, 1:83-CR-00150-PAC-1, 2020 WL 5992340, at *1 (S.D.N.Y. Oct. 9, 2020).

## II.
### DANGER TO THE COMMUNITY AND APPLICABLE 3553 FACTORS

"Before granting a reduction in sentence under section 3582(c)(1)(A), the Sentencing Commission directs the court to consider whether a defendant poses 'a danger to the safety of any other person or to the community.'" *United States v. Potts*, 06-80070-CR, 2020 WL 5540126, at *5 (S.D. Fla. Sept. 14, 2020).  Furthermore, "[w]hen a defendant has shown that there are extraordinary and compelling reasons for release, and that he is not likely to pose a danger to the community, the Court may reduce his sentence to time served if doing so is consistent with the applicable factors in 18 U.S.C. § 3553(a)." *Potts*, 06-80070-CR, 2020 WL 5540126, at *6 (S.D. Fla. Sept. 14, 2020).  The factors listed in 3142(g), *i.e.*, dangerousness to the community, are largely duplicative of those in 3553(a).

While the charges for which **MR. CANO** was convicted and sentenced are serious offenses that, in themselves, pose a danger to the community, this must be balanced against the significant time **MR. CANO** has already served, his rehabilitation, family support, and the danger imposed by remaining incarcerated.  *See Rivera*, 13-20775, 2020 WL 5105090, at *4 (E.D. Mich. Aug. 31, 2020).  To date, **MR. CANO**, a non-violent first time offender, has served more than 24 years of the life sentence imposed following his conviction at trial.  Over 24 years is a long time behind bars by any measure for anyone.  *Millan*, 91-CR-685 (LAP), 2020 WL 1674058, (S.D.N.Y. *Apr. 6, 2020) (citing United States v. McGraw,* 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) ("Mr. McGraw has been in custody since September 2002 – nearly 17 years.  That is a significant sanction").

In evaluating whether a defendant poses a danger to the community courts view a defendant's recent good conduct *as a more reliable indicator of his likelihood to recidivate.  Id.* (citing *Pepper v. United States*, 562 U.S. 476 (2011) (Defendant's post-sentence rehabilitation

provides the "most up-to-date picture" of the defendant and is the best evidence available of the likelihood the defendant will or will not engage in future criminal conduct).  In a letter to this Court his nephew, Luis Macias, wrote the following:

> As a young child, my uncle was a second father to me.  He was a strong man who consistently challenged me to do better. . . .
>
> My uncle's top lesson, however, was that we are here to help others, whether family or strangers.  I grew up witnessing his good deeds as he constantly helped our neighbors and friends.  If a neighbor was moving, my uncle would be the first person there with a dolly.  I give my uncle credit for the man I have become.
>
> While my uncle has been in prison, I have maintained a good relationship with him. I make it a point to visit him as often as I can. While he cannot be at the office with me, he still serves as one of my mentors. . . .
>
> Because of my uncle's life lessons I have dedicated my career to making people lives better through technology.

A copy of **Mr. Cano** nephew's letter is attached as Exhibit № 11.

The Government, by contrast, has not spoken to **Mr. Cano** nor his family members, and knows nothing about the person that **Mr. Cano** is today. The Government's only mechanism for assessing **Mr. Cano's** *current* dangerousness to the community is by reviewing the 24 year old case history for the instant cause.  Its desperation to have this Court find him to be a danger to the community is clearly illustrated by its efforts to taint this Court with Jorge Hernandez's attempted hit on a DEA agent, *which is unrelated to* **Mr. Cano**.

**Mr. Cano's** recent conduct in prison, coupled with the numerous letters from BOP and his nephew's letter to this Court, are more indicative of the risk he currently poses to the safety of the community, and his more recent behavior weighs heavily in favor of his release.  *See Potts*, 06-80070-CR, 2020 WL 5540126, at *5 (S.D. Fla. Sept. 14, 2020); *United States v. Perez*, 88-10094-1-JTM, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020).

Furthermore, **MR. CANO** has a reentry plan that will allow him to abide by all terms of supervised release.   **MR. CANO'S** nephew partnered with attorney Jaime Lopez to form GrainChain, Inc.  Both partners have indicated that should this Honorable Court grant **MR. CANO'S** Motion for Compassionate Release, **MR. CANO** would be employed by GrainChain.  A copy of Mr. Lopez' affidavit is attached as Exhibit № 12.  Furthermore, as reflected in **MR. CANO**'s *pro se* motion, he would live with his nephew in McAllen, Texas.[17]  Furthermore, **MR. CANO'S** strong family ties, as highlighted by the Government, support his compassionate release.

Finally, any concerns this Court may still have regarding **MR. CANO'S** possible recidivism upon his release can be addressed by adding additional strict conditions to his sentence of supervised release.[18]

**MR. CANO'S** clean disciplinary record and extensive efforts at rehabilitation while incarcerated weigh in favor of his release and, as discussed, his age make recidivism unlikely. *United States v. Rice*, 83 CR. 150-3 (LGS), 2020 WL 4505813 (S.D.N.Y. Aug. 5, 2020).  We respectfully agree with the BOP staffers that wrote on **MR. CANO'S** behalf, the over 24 years he has spent in prison are sufficient for purposes of specific and general deterrence, especially in light of the fact that **MR. CANO** is a non-violent first offender.  *Id.*  (citing  *United States v. Wong Chi Fai*, No. 93 Cr. 1340, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019) (concluding, "notwithstanding the seriousness of [defendant's] criminal conduct," that the sentence served

---

[17]      The Government's assertion that evidence at **MR. CANO'S** trial identified McAllen, the location where GrainChain is located, as one of the points of entry that **MR. CANO** used to import cocaine, in an effort to taint GrainChain, and **MR. CANO'S** employment opportunity is appalling and unwarranted. Neither Mr. Macias nor his partner have ever had any run-ins with the law.  On the contrary, as indicated in Mr. Lopez' affidavit, he is a respected lawyer that served as a law clerk.

[18]      *See Blake*, 15-CR-80018, 2020 WL 4677309, at *5 (S.D. Fla. Aug. 12, 2020) ("While the Government emphasized Defendant attempted to meet underage children, release into home confinement with electronic monitoring will mitigate the risk."); *Brown*, 14-CR-60161, 2020 WL 5116781, at *7 (S.D. Fla. Aug. 31, 2020).

(twenty-six years of a life sentence) appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law" and "provide[s] just punishment for the offense" (citing 18 U.S.C. § 3553(a)) (alterations in original)); *see also* U.S. Sentencing Comm., *Length of Incarceration and Recidivism*, https://www.ussc.gov/sites/default/files/pdf/research-and       publications/research-publications/2020/20200429_Recidivism-SentLength.pdf(last visited August 4, 2020).

Additionally, as illustrated by the above relevant chart, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), also cuts in favor of release.  Thus, the applicable § 3553(a) factors favor release.

**C<small>ONCLUSION</small>**

**M<small>R</small>. C<small>ANO</small>** has demonstrated extraordinary and compelling circumstances that warrant a sentence reduction.  While the Government has characterized **M<small>R</small>. C<small>ANO'S</small>** abusive and litigious practice of filing numerous frivolous motions and/or petitions attacking his convictions, as a mark against his character, his prison record indicates that he has spent his three decades of incarceration engaged in positive educational and vocational programs, as well as outreach efforts with other prisoners.  *Hope*, 90-CR-06108-KMW-2, 2020 WL 2477523, at *4 (S.D. Fla. Apr. 10, 2020). Finally, the fact that **M<small>R</small>. C<small>ANO</small>** is serving a life sentence of imprisonment does not preclude his compassionate release.   Even before the COVID-19 pandemic, courts recognized that circumstances could warrant compassionate release even in the case of prisoners serving life sentences.  *United States v. Heffington*, 1:93-CR-05021-NONE, 2020 WL 4476485, at *9 (E.D. Cal. Aug. 4, 2020). **A chart summarizes several Motion for Compassionate Release cases that were granted to defendants who were convicted of a continuing criminal enterprise (some**

with violence) and had been sentenced to life imprisonment is attached hereto and incorporated by reference herein as Exhibit № 13.

WHEREFORE, the Defendant, LUIS CANO, respectfully requests that this Honorable Court grant the relief sought herein and Order MR. CANO released from prison, or in the alternative, Order that as a special condition of his supervised release he complete the rest of his sentence in home confinement.

RABIN & LOPEZ, P.A.

800 Brickell Avenue, Suite 1400
Miami, FL 33131
Tel: 305.358.1064
Email: sjr@miamilawyer.com

*/s/ Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.
Florida Bar № 273831

*/s/ Andrea C. Lopez*

ANDREA C. LOPEZ
Florida Bar № 109512

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of November 2020, a true and correct copy of the Luis Cano's Motion for Reconsideration was furnished via the CM/ECF system to all parties designated to receive the electronic filings in this cause.

/s/ *Andrea C. Lopez*

ANDREA C. LOPEZ